STATE of Wisconsin, Plaintiff-Appellant,

· v.

Mark S. MIELKE, Defendant-Respondent.†

Court of Appeals

*No. 01–3116–CR. Submitted on briefs August 12, 2002.—*
*Decided September 4, 2002.*

2002 WI App 251

(Also reported in 653 N.W.2d 316.)

† Petition to review denied 11-12-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Jennifer E. Hashold*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David J. Van Lieshout* of *Menn, Teetaert & Beisenstein, Ltd.*, Little Chute.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. The State appeals an order suppressing evidence obtained by a law enforcement officer who entered a private residence without a warrant after a domestic violence report. The State argues that the officer's entry was permitted by exigent circumstances.[1] We agree and reverse the order.

---

[1] The State also argues that the entry was permissible under the emergency doctrine and was based on the owner's consent. However, because we hold that there are sufficient exigent circumstances justifying the entry, we do not need to address these additional arguments.

## BACKGROUND

¶ 2. On March 10, 2001, Outagamie County Sherriff's deputies Rachael Miller and John Hoffman responded to a report that Mark Mielke had struck Ruth Byrne at their home, and that Byrne was spitting blood. Miller had eleven years of law enforcement experience and had responded to domestic violence reports before. Additionally, Hoffman had been to Mielke's house several times for domestic abuse calls.

¶ 3. Upon the officers' arrival, Byrne came onto the front porch and told Miller that there was nothing wrong. Byrne did not appear to have any injuries. Although the scene was calm, Miller observed that Byrne was crying, shaking and cowering in a corner. Byrne then turned to go back into the house, telling Miller not to follow her. As Byrne tried to close the door behind her, Miller used her hand, and possibly her foot, to prevent the door from being closed. Believing Byrne to be in danger, Miller continued to talk with Byrne for thirty seconds to two minutes. Then, through the open door, Miller saw Mielke inside the house. She asked Mielke's permission to enter the house, which Mielke granted.

¶ 4. Mielke ultimately was charged with recklessly endangering another's safety, being armed while under the influence of alcohol, battery and felony bail jumping. Upon a motion by Mielke, the trial court suppressed evidence found inside the house stating that although there was probable cause, there were not sufficient exigent circumstances to justify entering the home. The State appeals the suppression order.

## STANDARD OF REVIEW

¶ 5. In reviewing a circuit court's order granting or denying a motion to suppress evidence, the court's findings of evidentiary or historical fact will be upheld unless they are clearly erroneous. *State v. Matejka*, 2001 WI 5, ¶ 16, 241 Wis. 2d 52, 621 N.W.2d 891. However, whether the court's findings of fact pass statutory or constitutional muster is a question of law that this court reviews independently. *Id.*

## DISCUSSION

¶ 6. "A warrantless search of a home is presumptively unreasonable under the Fourth Amendment." *State v. Richter*, 2000 WI 58, ¶ 28, 235 Wis. 2d 524, 612 N.W.2d 29. An exception to the warrant requirement arises when the State can demonstrate "both probable cause and exigent circumstances that overcome the individual's right to be free from government interference." *State v. Hughes*, 2000 WI 24, ¶ 17, 233 Wis. 2d 280, 607 N.W.2d 621.

¶ 7. In this case, Mielke does not dispute the trial court's ruling that probable cause existed. Instead, he contends that there were no exigent circumstances justifying the warrantless entry. Our analysis of whether the officers acted reasonably in entering the house without a warrant is measured against the "totality of the circumstances." *State v. Garrett*, 2001 WI App 240, ¶ 16, 248 Wis. 2d 61, 635 N.W.2d 615. The test is objective: what a reasonable police officer would reasonably believe under the circumstances. *See Richter*, 2000 WI 58 at ¶ 30.

There are four well-recognized categories of exigent circumstances that have been held to authorize a law enforcement officer's warrantless entry into a home: 1) hot pursuit of a suspect, 2) a threat to the safety of a suspect or others, 3) a risk that evidence will be destroyed, and 4) a likelihood that the suspect will flee.

*Id.* at ¶ 29.

¶ 8. Here, Miller believed Byrne's safety was threatened. The issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that Byrne was in danger. Due weight must be given to the specific reasonable inferences that the officer was entitled to draw from the facts in light of her experience. *State v. Guy,* 172 Wis. 2d 86, 94, 492 N.W.2d 311 (1992) (citation omitted). When a police officer is confronted with two reasonable competing inferences, one that would justify the search and another that would not, the officer is entitled to rely on the reasonable inference justifying the search. *See State v. Tompkins,* 144 Wis. 2d 116, 124–25, 423 N.W.2d 823 (1988).

¶ 9. The trial court stated that the scene was calm, there was no sign of injury and Byrne denied injury, concluding that there was "no indication at that particular time that a domestic incident was occurring." This is one inference that may be drawn from the facts.

¶ 10. However, another inference, at least as reasonable, is that domestic violence was in fact occurring. There was a report that Byrne had been hit in the stomach and was spitting blood. Hoffman had previously responded to reports of domestic violence at Mielke's home. Byrne was crying, shaking and cowering on the front porch. Byrne's denials were inconsistent

with her demeanor, and it is well accepted that domestic violence victims often refuse to report the abuse. *See State v. Jacobs*, 2 P.3d 974, 976 (Wash. Ct. App. 2000).[2] Under all of these circumstances, Miller, with her eleven years of experience, could reasonably believe that Byrne's safety was threatened. Consequently, we conclude that under the totality of circumstances test, Miller was entitled to infer that exigent circumstances existed. Therefore, her entry was permitted.

*By the Court.*–Order reversed.

---

[2] *See also State v. Grant*, 920 P.2d 609, 613 n.5 (Wash. Ct. App. 1996) (citing A. GANLEY, PH.D., *Domestic Violence: The What, Why and Who, As Relevant to Civil Court Domestic Violence Cases,* contained in Domestic Violence Cases in the Civil Court: A National Model for Judicial Education, 20, the Family Violence Prevention Fund (1992)).